UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ARANELY MOLINA-CANTERO,

    Plaintiff,

  v.

DEPARTMENT OF HOMELAND SECURITY (DHS),  SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,  ACTING COMMISSIONER, U.S. CUSTOMS AND BORDER PROTECTION, EXECUTIVE DIRECTOR OF ADMISSIBILITY AND PASSENGER PROGRAMS, UNITED STATES CUSTOMS AND BORDER PROTECTION,  ACTING DIRECTOR OF DEPARTMENT OF HOMELAND SECURITY,  ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

    Defendants,

Case No. 2:25-cv-549-KCD-NPM

## **ORDER**

Plaintiff Aranely Molina-Cantero is a Cuban national who entered the United States without inspection. She was detained by immigration authorities and released days later with a document called an "Order of

Release on Recognizance." (Doc. 1 ¶ 22.)[1] In statutory terms, the Government classified this release as "conditional parole" under 8 U.S.C. § 1226(a). (*Id.*)

Molina contends this label is wrong. She argues that because she was an arriving alien, the Government had no legal authority to use § 1226(a). Instead, she claims they should have processed her under a different statute, § 1225(b), which authorizes release only through "humanitarian parole" under 8 U.S.C. § 1182(d)(5)(A). She asks this Court to correct the record and compel the Government to issue her the humanitarian parole she says she effectively received. (Doc. 1 ¶ 1.)

The distinction matters because under the Cuban Adjustment Act, a Cuban national can adjust their status to lawful permanent resident only if they have been "inspected and admitted or paroled into the United States." *Perez v. U.S. Bureau of Citizenship & Immigr. Servs.*, 774 F.3d 960, 965 (11th Cir. 2014). Humanitarian parole counts for this purpose, but conditional parole does not. *See Castillo-Padilla v. U.S. Atty. Gen.*, 417 F. App'x 888, 891 (11th Cir. 2011).

Whatever the merits of Molina's preferred statutory reading, her lawsuit runs into a wall: the jurisdiction-stripping provisions of the Immigration and Nationality Act (INA). Because Congress has vested the decision to grant

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

2

humanitarian parole solely in the discretion of the Secretary of Homeland Security, federal courts lack the power to review it. Accordingly, Defendants' Motion to Dismiss (Doc. 16) is **GRANTED**.

## I. Background

The facts are brief and undisputed. Molina entered the United States in July 2022. (Doc. 1 ¶ 19.) Immigration officials detained her and, shortly after, released her with a Notice to Appear and an Order of Release on Recognizance. (*Id.* ¶¶ 21-22.) The release order explicitly cited § 236 of the INA (codified at 8 U.S.C. § 1226) as the authority for her release. (*Id.*)

Molina argues this was a legal impossibility. She relies on the distinction between two categories of noncitizens: those seeking admission (who are processed under § 1225) and those already present in the country (who are processed under § 1226). Because she was apprehended shortly after crossing the border, she claims she was an applicant for admission subject to mandatory detention under § 1225(b). (Doc. 1 ¶¶ 23, 31.) And under that provision, the only way out of detention is humanitarian parole for urgent reasons or significant public benefit. 8 U.S.C. § 1182(d)(5)(A); *see Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

Molina's theory is this: (1) the Government had to process her under § 1225; (2) the only release from § 1225 is humanitarian parole; (3) therefore,

her release *must* be treated as humanitarian parole, and the Court should order the Government to provide the paperwork to prove it.

## II. Discussion

Molina's complaint alleges claims under the Administrative Procedure Act and seeks a writ of mandamus. (Doc. 1.) But before the Court can turn to the merits, it must decide if it has the power to hear the case at all. Here, the text of the INA says we do not.

Federal courts have limited jurisdiction. In the immigration context, Congress has sharply curtailed that jurisdiction. Pertinent here, 8 U.S.C. § 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review" any decision "the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of [asylum] relief[.]" *Id.* This bar applies whenever the statute itself grants the executive branch discretion over the decision at issue. *See Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1143 (11th Cir. 2009); *Onyenanu v. Garland*, No. 8:23-CV-138-CEH-TGW, 2024 WL 5078098, at *4 (M.D. Fla. Dec. 11, 2024).

So we look to the text of the statute Molina invokes to grant humanitarian parole—8 U.S.C. § 1182(d)(5)(A). It says the Secretary "may, *in his discretion*, parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian

4

reasons or significant public benefit any alien applying for admission to the United States[.]" *Id.* (emphasis added).

It is hard to imagine a clearer grant of discretion. The statute does not say the Secretary must parole anyone. It does not say that if the Secretary makes a mistake in detention authority, parole is automatic. It says the Secretary may grant parole if he chooses. Because the statute explicitly commits this decision to the Secretary's discretion, the INA forbids the Court from addressing it. *See Pouzo v. USCIS Miami*, 516 F. App'x 731 (11th Cir. 2013) ("The decision whether to parole an alien into the United States rests within the discretion of the Secretary, and that discretionary decision is shielded from judicial review[.]"); *see also B.R. v. Rubio*, No. 22-CV-1908, 2025 WL 2897728, at *4 (D.D.C. Oct. 11, 2025).

Molina tries to sidestep this bar by arguing she is not challenging a discretionary denial of humanitarian parole, but rather a failure to follow the law. (Doc. 20 at 12.) She frames her case as a legal question: "the agency's use of an entirely inapplicable statutory framework, specifically, 8 U.S.C. § 1226(a), to effectuate release from custody of an individual who was mandatorily detained under § 1225(b)." (*Id.*) In other words, the Government's use of § 1226(a) was a legal error that can be challenged and corrected here.

But we must look to the substance of the complaint, not just the labels Molina used. *See Kifle v. YouTube LLC*, No. 1:21-CV-00238-JPB, 2021 WL

5

3924795, at *3 (N.D. Ga. Mar. 12, 2021) ("[T]he pleading labels . . . do not control the analysis. The focus is on the substance of [the] claims, not the form."). Every claim asks this Court to either compel the Government to grant her humanitarian parole or hold she is entitled to it. That is a request for a discretionary benefit. As the Eleventh Circuit has noted in similar contexts, a plaintiff cannot manufacture jurisdiction by framing a discretionary dispute as a reviewable error. *See Alvarez Acosta v. U.S. Atty. Gen.*, 524 F.3d 1191, 1196–97 (11th Cir. 2008); *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1273 (11th Cir. 2021).

Molina's lawsuit rests on a conflation of two distinct legal concepts. She presumes that if her release under § 1226 (conditional parole) was unauthorized, it automatically converts into a release under § 1182(d)(5)(A) (humanitarian parole). But there is no legal authority for this position, nor does it make sense. Molina has no clear right to humanitarian parole, because humanitarian parole is never an entitlement. It is an exception. *See Jennings*, 583 U.S. at 298 (noting that § 1225(b) "mandate[s] detention"). If the Government lacked the authority to release Molina under § 1226, as she vigorously argues, then her release was unauthorized. The remedy for an unauthorized release is not to retroactively bestow a discretionary benefit she never received. It is to return to the status quo ante—which, under § 1225(b), is mandatory detention.

One last point. Had Molina limited her complaint to a narrow question of statutory interpretation or error—as she claims in her response brief—this might be a different case. (*See* Doc. 20 at 12-14.) Federal courts generally retain jurisdiction to determine whether an agency has acted *ultra vires* or exceeded its statutory mandate. *See, e.g.*, *Lara Santiago v. Mayorkas*, 554 F. Supp. 3d 1340, 1346 (N.D. Ga. 2021). But Molina demands far more than a mere declaration of error. She does not simply ask this Court to erase an allegedly invalid release order—she wants to replace it with a grant of humanitarian parole. (Doc. 1 ¶ 1 ("This action seeks declaratory and mandatory relief to force the Defendants to issue a humanitarian parole[.]").) That is a bridge too far. While a court may have the power to vacate an unlawful agency action, it cannot usurp the executive's role by affirmatively awarding a discretionary benefit that it never saw fit to bestow. We may have the authority to tell the Secretary he used the wrong statute, but we absolutely lack the authority to force him to issue humanitarian parole in its place.

### III. Conclusion

Molina essentially asks this Court to retroactively exercise the Secretary's discretion in her favor to correct an alleged procedural error. The law forbids this. The decision to grant humanitarian parole is committed to the executive branch's discretion, and this Court lacks the jurisdiction to compel it. For these reasons, Molina's complaint is **DISMISSED WITHOUT**

**PREJUDICE** for lack of jurisdiction. The Clerk is directed to terminate any pending deadline and close the case.

**ORDERED** in Fort Myers, Florida on January 12, 2026.

*[signature]*

Kyle C. Dudek
United States District Judge